SWEET CANDY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32124.   Promulgated May 11, 1932.

*B. H. Saunders, Esq.*, and *Charles D. Hamel, Esq.*, for the petitioner.

*J. L. Backstrom, Esq.*, for the respondent.

40

OPINION.

MATTHEWS: The first contention of the petitioner is that it is entitled to have $90,172.46 restored to invested capital. Of this amount, it claims that $30,000 represents cash payments made to Wittenberg; $10,000, good will of Servis, Kopp, Eite and the Merchants Candy Company; and $50,172.46, amounts expended for special advertising campaigns and exhibits. As set forth in our findings of fact, the

petitioner definitely established that it expended, from 1909 to 1916, $47,850.02 for special demonstrators, window displays, exhibits, samples, and other advertising, for the purpose of introducing its special brands, and that no part of this amount was ever capitalized. Other amounts were expended for this purpose, but the exact amount can not be determined, due to loss of records. The petitioner contends that these were capital expenditures and, though charged to expense, should now be restored to invested capital.

We can not agree with this contention of the petitioner. It is true that the amount established by the evidence, and probably more, was expended to advertise its trade-marked and special brand goods but this alone does not establish that such amounts were of a capital nature. As the expenses were incurred they were charged to advertising or other expense accounts. The special campaign resulted not only in building up a market for the trade-marked goods, but also increased the sales of these and the petitioner's other goods. A table admitted in evidence shows that the gross sales increased from approximately $435,000 in 1909 to over $2,000,000 in 1920. We do not know what proportion of the sales for any of these years was of trade-marked goods as, prior to 1921, there was no separate record kept of the sales of the trade-marked goods. The petitioner has thus failed to establish how much of the increase in sales was attributable to the advertising of its trade-marked goods. In such a situation, we can not say that the amounts so expended all resulted in the development of its special lines and were of a capital nature. Although there may be a few instances in which advertising expenses have been held to constitute capital expenditures, they are primarily in the nature of current expenditures, resulting in immediate increase of sales. In the instant proceeding there is no evidence upon which we can determine or even make an estimate as to how much of the amount of $47,850.02 constituted capital expenditures. In such a situation the petitioner is not entitled to have any part of such amount restored to its invested capital. See *Northwestern Yeast Co.*, 5 B. T. A. 232; *Mead Cycle Co.*, 10 B. T. A. 887; *Kress & Owen Co.*, 12 B. T. A. 991; *Richmond Hosiery Mills*, 6 B. T. A. 1247, affd., 29 Fed. (2d) 262; certiorari denied, 279 U. S. 844; *W. H. Hill*, 22 B. T. A. 1351; *Three-In-One Oil Co.* v. *United States*, 35 Fed. (2d) 987, 68 Ct. Cls. 518.

As to the good will, the petitioner is claiming that it paid $7,500 in cash for good will acquired from Eite, Kopp and Servis; $30,000 for good will acquired from Wittenberg, and $2,500 for good will acquired from the Merchants Candy Company. The petitioner contends that the value of the assets received from Eite, Kopp and Servis and the Merchants Candy Company and junked represents the amount of the purchase price paid in each instance for good will. We can not see any merit in this contention; moreover, Saroni testi-

fied that these companies had not been operating at a profit and that the good will was worth very little, if anything. As to the transaction with Wittenberg, it is doubtless true that there was some good will paid for in cash, but it was paid by Saroni and not by the petitioner; moreover the payment of $30,000 was not only for the use of the name "Sweet Candy Company," but also for the abrogation of the agreement whereby Wittenberg was to receive one-third of the profits of the petitioner. There is no basis upon which an allocation can be made between these two items. We are, therefore, of the opinion that the petitioner has not established that it is entitled to have any part of the amount of $90,172.46 restored to its invested capital.

The petitioner's second allegation of error relates to the respondent's disallowance of relief under the provisions of section 327 of the Revenue Act of 1918. That section provides as follows:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

\* \* \* \* \* \* \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital \* \* \*.

In some instances where a taxpayer has established that capital expenditures have been charged to expense and the exact amount can not be determined, we have held that "invested capital can not be determined" within the meaning of the statute and that relief should be granted under the provisions of section 327(a). In the case of *George W. Caswell Co.*, 14 B. T. A. 15, the petitioner, engaged in the coffee and tea business, had expended an aggregate amount of approximately $295,000 for route extensions, advertising special brands and creating new markets. The evidence in that case clearly showed that the petitioner's brand sales had increased from 66 per cent of its gross sales in 1909 to 84 per cent in 1921. We held that the exact amount attributable to capital could not be determined and granted special assessment, saying:

The expenditures of the petitioner herein constituted to a substantial extent investments in capital assets which have not been and can not be included in invested capital, but which nevertheless contributed materially to the produc-

tion of the taxable income. This is strikingly shown by the rapid increase in the petitioner's brand sales, which in 1921 constituted 84 per cent of its gross sales.

\*        \*        \*        \*        \*        \*        \*

In our opinion, therefore, the facts in the present case bring the petitioner within the scope of section 327(a) of the Revenue Act of 1921, *supra*, and entitle it to have its tax determined in accordance with the provisions of section 328 of said act, upon the ground that its invested capital can not be determined as provided in section 326.

It should be noted in the *Caswell* case that the amounts expended for advertising were very substantial and there was no evidence in that case as to the invested capital allowed. In the instant case the respondent has allowed the petitioner an invested capital of $749,-423.10 and the amount which the petitioner claims can not be determined is not substantial in relation to the total capital already allowed. The statute was not intended to cover cases where the respondent has allowed a considerable invested capital and it is clear that only an inconsiderable amount can not be determined. See *American Gut & String Mfg. Corporation*, 19 B. T. A. 608. In the case of *Wise & Cooper Co.*, 19 B. T. A. 1001 (affirmed by the Circuit Court of Appeals in 53 Fed. (2d) 843), we said:

As to the remaining contention under subdivision (a), all we know is that "quite a substantial amount" of money was expended by the partnership and the petitioner for advertising. No attempt was made to show what proportion of the whole amount spent was expended to create future sales. It may be that some part of the unknown sum expended did result in establishing petitioner's produce in the minds of the public and thus create a capital asset, but it is also apparent that a portion was used to bring about current sales. Without more facts than those before us we can not say that any part of the amount spent should be capitalized, and, therefore, be considered in computing invested capital.

In our opinion the petitioner has failed to show that its invested capital can not be determined.

As stated, the respondent has determined an invested capital of $749,423.10, and only an inconsiderable amount, if any, can not be determined. We are, therefore, of the opinion that the petitioner is not entitled to special assessment under the provisions of subdivision (a) of section 327.

With regard to the provisions of subdivision (d) of said paragraph, the petitioner contends that its capital is abnormal due to the fact that it owned valuable good will, trade names and trade brands which were not included in its invested capital; and that its income is abnormal, due to the fact that the respondent has allowed insufficient depreciation on its plant and machinery, that salaries paid to officers were inadequate, and that petitioner used Saroni's warehouse and office facilities in San Francisco at no cost.

The petitioner's claim as to abnormality of capital rests upon the theory that it had acquired assets of substantial value, none of which were ever capitalized; that these assets consisted of good will and valuable trade names and trade-marks, and that they were material income-producing factors. It is true that we have held in a number of cases that in such circumstances an abnormality exists and that special assessment should be granted. See *Clarence Whitman & Son, Inc.*, 11 B. T. A. 1192; *Rothschild Colortype Co.*, 14 B. T. A. 718; and *Oregon Brass Works*, 21 B. T. A. 257. In the *Whitman* case the asset excluded was the most substantial part of the taxpayer's capital and was the principal income-producing factor. In the instant proceeding the petitioner sought to establish that it had intangible assets of a value of at least $700,000. The proof, consisting of a table showing tangible assets and earnings over a limited period of years, is clearly insufficient to establish such a value and we do not consider it necessary to discuss it at any length. There is no evidence as to the value of such intangibles other than the fact that a part of amounts expended for advertising may have contributed to some extent in the building up of the trade-marks, but such amount is small in comparison with petitioner's total invested capital, and it is clear that these assets were not material income-producing factors. See *Sanford Cotton Mills*, 14 B. T. A. 1210. The petitioner's situation is not comparable with that of the taxpayer in the *Whitman* case. The petitioner probably did have a good will of some value, but so does almost any going concern. We have held that there is nothing abnormal in a situation where a taxpayer has by ordinary good business methods built up a valuable good will and have made a distinction between this situation and the one in the *Whitman* case, and others cited above. The situation herein is similar to that in the case of *Raymond Syndicate, Inc.*, 21 B. T. A. 600, in which we said:

> The second contention of the petitioner is that a good will of great value was built up during the years 1916 to 1919, inclusive, which was in no wise reflected in the invested capital of the petitioner for the years 1920 and 1921. Competent witnesses testified as to the value of the good will which had been built up by the large expenditures for advertising during the years 1916 to 1919. It is to be noted, however, that all of the payments for the advertising were treated as expenses upon the petitioner's books of account. In no case were they capitalized. The advertising was for the sale of merchandise then on the petitioner's shelves. Even though a good will resulted from that advertising, we think that did not create an abnormality in the invested capital. Many stores which conduct large advertising campaigns create a valuable good will which, under the provisions of the taxing statute, will not ordinarily be reflected in the invested capital determined under the provisions of the taxing acts. There is, however, nothing abnormal in this fact. A condition that

is common to many corporations does not create such an abnormality in invested capital as warrants the application of special assessment for the purpose of determining tax liability.

The facts in this case appear to be simply that the petitioner through unique advertising had large profits in the years 1920 and 1921. The provision of the statute is that section 327(d)—

> * * * shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital * * *.

If there was any abnormality in the invested capital, it is such as results from the normal application of the statute. In our opinion it was not the intention of Congress that the special assessment provision should have application to such a case as is presented herein.

There remains only the question of abnormality of income. The first ground upon which the petitioner is basing this claim is that it was allowed depreciation on its plant and equipment on the basis of depreciated cost, rather than on its March 1, 1913, value, which it claims was greatly in excess of such cost, thus resulting in an understatement of income for 1920. The evidence introduced by the petitioner tends to show that the March 1, 1913, value of the plant was in excess of the depreciated cost used by the respondent as the basis for depreciation deductions, but was not sufficient to show what that value is. Moreover, it should be noted that the petitioner's income for 1920 was $239,306.95 and the amount by which petitioner claims it was understated as a result of this item is only $5,900. Clearly, this is not sufficient to constitute an abnormality.

As to the remaining contentions, the evidence does not establish that the salaries paid to Leon and Arthur Sweet were inadequate, that the services of Saroni were of any great monetary value, or that the use of the warehouse resulted in any abnormality. We are, therefore, of the opinion, upon consideration of all the evidence, that the petitioner has not established that there is an abnormal condition of either capital or income sufficient to entitle it to have its tax computed under the provisions of section 328.

In view of our holding that the petitioner is not entitled to have amounts expended for advertising in prior years restored to invested capital, it is unnecessary to consider the respondent's allegation that he erred in allowing a deduction in 1920 for amounts expended for advertising.

Reviewed by the Board.

> *Judgment will be entered for the respondent.*

TRAMMELL and GOODRICH dissent.